Albert Dick Gugenheim v. Commissioner. Esther Gladys Gugenheim v. Commissioner.
Gugenheim v. Commissioner
Docket Nos. 45684, 45685.
United States Tax Court
T.C. Memo 1958-41; 1958 Tax Ct. Memo LEXIS 189; 17 T.C.M. (CCH) 203; T.C.M. (RIA) 58041; March 17, 1958
*189 Wentworth T. Durant, Esq., for the petitioners. Roy E. Graham, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: These cases are before us upon remand from the Court of , (December 14, 1956). The respondent determined a deficiency of $3,721.41 for the calendar year 1947 against each of the petitioners. The petitioners contest the determinations (1) that their daughter was not a member of a family partnership during the firm's fiscal year ended June 30, 1947, and (2) that the petitioners realized taxable capital gain upon the transfer of properties of the partnership to a corporation on July 1, 1947. Other adjustments are not in dispute. In Docket Nos. 20569 and 20570, these petitioners contested respondent's determination of deficiencies for the calendar year 1946 based upon a holding that their daughter was not a member of this partnership in that year. This Court sustained the respondent in a Memorandum Findings of Fact and Opinion entered July 26, 1950. That case was not appealed. In the present proceeding we held in , *190 filed October 22, 1954, that the doctrine of collateral estoppel applied to bar a second examination of the questions decided in the earlier suit and thereupon sustained the respondent on the partnership issue. We decided the second issue, also, for the respondent, holding that the evidence did not meet the petitioners' burden of proving error in the determination. The Court of Appeals for the Fifth Circuit reversed and remanded with directions to consider on their merits all of the issues and contentions presented or to be presented and all of the evidence offered and to be offered in support of them. The petitioners filed separate income tax returns for 1947 with the collector of internal revenue at Dallas, Texas, each reporting half the income of the marital community. Findings of Fact Albert Dick Gugenheim was engaged in the business of selling transmission machinery, conveying machinery and other industrial machinery for more than 20 years prior to 1935. In that year he lived in Waco, Texas, and was manager of a branch office of a San Antonio firm. In that year he sustained a serious injury which disabled him for a time. In 1939 he resumed business activity at Amarillo, *191 Texas, living in a hotel and selling products from the hotel room and later from a room in the basement of the hotel. He had a small stock of belts for conveyor machinery and refrigerators and of chains for power machines. He secured orders and filled them from stock or directly from the factory. His former acquaintance was helpful in securing orders. In the summer of 1940 the petitioners' daughter Bette Ann assisted him in his office, answering phone calls, filling orders from stock or transmitting orders to manufacturers. The office was moved to a different location in August or September. Bette returned to college that fall, but assisted her father again in the summer of 1941 between college semesters. In 1942 she left college in February and assisted her father part of each week, attending classes at a nearby teachers college for part of the time. Her assistance was valuable to Gugenheim as it gave him more time for outside selling to have the office work cared for. He gave her money for personal expenses but paid her no regular salary. In November 1942, Bette, then age 20, married James Manhein, who was then in the armed services. She lived with her husband in Florida, where *192 he was stationed until 1944. After Manhein was sent overseas in 1944, Bette returned to Amarillo and worked in Gugenheim's business at a small salary until February 1945. She had a baby in March 1945. The petitioners' son, Albert Dick Gugenheim, Jr. entered the Navy in 1942 and was on active duty until October 1945. He had previously had experience in selling for another business concern. In 1945 Gugenheim discussed with his son, and with Bette and James a plan to have them take part in his business as partners. In the summer of 1945 a partnership agreement was signed by Gugenheim, his son, Bette and James Manhein. Bette and James signed a note for $10,000 payable to Gugenheim five years from date, with interest, and Albert, Jr., signed a similar note in payment for the partnership interests acquired. At the time of signing the note Bette and James had no substantial amount of property. Bette then was caring for her small child but had intentions of returning to work in the business. Albert, Jr. went into the business with his father upon his release from the Navy and worked as a salesman. When James left the armed services his father desired his services in Shreveport, Louisiana, *193 and he decided to go there. Bette accompanied him and did not participate actively in the partnership of A. D. Gugenheim Company. The partnership's fiscal year ended June 30. As of June 30, 1946, the capital accounts of the partners were: A. D. Gugenheim, Sr.
$41,530.08
A. D. Gugenheim, Jr.
13,843.35
Mrs. J. M. Manhein
13,843.35
In the fiscal year ended in 1947, Gugenheim drew $12,000 and Albert, Jr. drew $3,000 before the remaining profits were distributed. The partnership return showed total profits distributed and capital accounts as follows: Capital
Profits
Accounts
A. D. Gugenheim, Sr.
$37,250.43
$69,800
A. D. Gugenheim, Jr.
11,416.80
22,000
Mrs. J. M. Manhein
8,416.80
22,100
In the fiscal year ended in 1947, Gugenheim, his son and his daughter in good faith and with a business purpose joined together as partners in the conduct of the enterprise under the name of A. D. Gugenheim Company. At the end of the partnership's fiscal year in 1947 the partners owed a substantial amount to banks. One of the bankers urged Gugenheim to associate an experienced business man in the enterprise. A. P. Hancock, a former city manager *194 of Amarillo, was willing to take part and make an investment in the business. It was agreed by the partners and by Hancock that a corporation should be formed. In August 1947, a Texas corporation, A. D. Gugenheim, Inc., was formed to succeed the partnership A. D. Gugenheim Company. At this time the assets, liabilities and net worth of the partnership were as follows: ASSETS
Current Assets
Cash
$ 4,097.08
Receivables
34,448.49
Merchandise Inventory
176,895.20
Total Current Assets
$215,440.77
Fixed Assets (depreciated value)
Autos and Trucks
$ 5,912.37
Furn. and Fixtures
3,894.76
Totals
9,807.13
Real Estate
5,500.00
Total Fixed Assets
15,307.13
Other Assets
Utility Deposits
38.00
Patterns
208.00
Deposit Browning Mfg.
Co.
1,543.15
Prepaid Insurance
1,619.79
Total Other Assets
3,408.94
Total Assets
$234,156.84
LIABILITIES
Current Liabilities
Overdraft, First Na-
tional Bank
$ 550.74
Accounts Payable -
Merchandise
11,468.05
Others
1,739.52
Accrued Interest
90.53
Accrued Taxes
225.00
$ 14,073.84
Notes Payable -
First National Bank
Amarillo
73,183.00
First National Bank
Hereford
13,000.00
86,183.00
Total Current Liabilities
$100,256.84
Net Worth
133,900.00
Total
$234,156.84
*195 A certified public accountant's certificate of August 12, 1947, accompanying the corporate charter contains the following statement regarding the interests of the parties in the business: Included in the Net Worth of $133,900.00 is a loan to the partnership of $20,000.00 from A. P. Hancock for which he is to be issued $20,000.00 worth of stock. The balance of the stock amounting to $113,900.00 is to be issued to the partners as follows: A. D. Gugenheim, Sr.
$ 69,800.00
A. D. Gugenheim, Jr.
22,000.00
Mrs. J. M. Manhein
22,100.00
Total
$113,900.00
The corporate charter dated August 31, 1947, stated that the authorized capital stock of the corporation was $150,000, divided into 1,500 shares, each of a par value of $100. The incorporators' subscription agreement of the same date related that $133,900 of the corporation's capital stock had been paid for by transferring to the corporation $129,802.92 in property of the partnership and $4,097.08 in cash. The rest of the capital stock was paid for by Gugenheim's promissory note to the corporation for $16,100. The subscription agreement listed the following persons as subscribers of the capital stock and the amounts *196 of their subscriptions: Amount
Amount
Subscribed
Paid In
A. D. Gugenheim, Jr
$10,000
$10,000
Bette Manhein
10,000
10,000
A. P. Hancock
45,000
45,000
A. D. Gugenheim
85,000
68,900
At the time of the formation of the corporation in 1947 there were accumulated profits credited to the partnership capital accounts of Gugenheim's son and daughter and they owed $10,000 each to Gugenheim personally on the five-year notes given in 1945. The profits exceeded the amounts of the notes and by agreement were applied to payment of the notes which were canceled. Gugenheim also paid the excess of the profits over the amounts of the notes to his son and daughter in cash or other consideration, leaving the book value of their interests in the business as $10,000 each and increasing his interest accordingly. Also Hancock increased his investment to $45,000. Opinion Gugenheim had built up a business at Amarillo between 1939 and 1945. He had found the services of his daughter especially helpful in the summers of 1940 and 1941 through most of the year 1942 and in the latter part of 1944 and early 1945. His son and son-in-law were in the armed services, but the *197 end of the war was in sight and he hoped to induce both of them, as well as Bette, to join in the business enterprise. He was not in the best of health and was willing to give them ownership interests as an inducement to participate. The son, daughter and son-in-law were willing to agree to participate when they became free to do so and signed an agreement to associate as partners as well as notes for purchase of the interests offered them. The son joined in the active conduct of the business in 1945 upon his release from the armed services and has continued since. Manhein, upon his release from the Navy, considered the proposition but elected to go to the aid of his father, and Bette who stayed with her husband did not take an active part in the partnership. The respondent concedes that the son was a partner but argues that Bette performed no services in the conduct of the partnership business and contributed no capital originating with her, that at the time she and her husband signed the note for $10,000, neither had any substantial assets and they had no prospects of paying the note except from the profits of the business. The issue is whether these parties in good faith and *198 acting with a business purpose intended to join together as partners in the present conduct of the enterprise. . Bette contributed no services to the partnership in the fiscal year ended in 1947 but she contributed capital in the form of the interest evidenced by the agreement and the note and the accumulated earnings of the first year's partnership operations which she could have withdrawn but chose to leave in the business. It may be observed that this is clearly not a tax avoidance scheme. Gugenheim had the advantage then available to taxpayers in a community property state of dividing all income with his wife for tax purposes. He was not in the best of health and wanted to secure again the participation of his daughter which had proved valuable in the past as well as that of his son and possibly of his son-in-law. There was a business purpose as well as parental love and affection behind the agreement. Due to circumstances unforeseen his daughter chose to devote herself to her own family, but continued her investment in the business as a partner. We hold that she was a partner in the fiscal year ended in 1947. *199 On the second issue the respondent determined that the petitioners had realized a taxable gain of $1,277.50 in the exchange of partnership property for stock in the successor corporation computed as follows: Value of stock received from A. D.
Gugenheim Company, Inc.
$120,000.00
Cost or other basis: Value of interest in net
assets of partnership,
A. D. Gugenheim Co.
$ 91,900.00
Note payable to A. D.
Gugenheim Co., Inc.
16,100.00
Cancellation of note
receivable from A. D.
Gugenheim, Jr.
10,000.00
Total
$118,000.00
Less: Cancellation of
note payable to A. D.
Gugenheim, Jr.
555.00
117,445.00
Long-term capital gain
$ 2,555.00
50% taxable
$ 1,277.50
Taxable capital gain reported in re-
spect of transfer of properties
None
Adjustment, increase income
$ 1,277.50
This computation assumes that Gugenheim owned Bette's interest and was entitled to the stock to be issued to her. Since we have determined that she was a partner this computation is erroneous. Also, the petitioners have explained that in arranging for the formation of the corporation there was an adjustment in the interests of the family members. The son's interest with *200 accumulated earnings was $22,000 and Bette's was $22,100 and each owed $10,000 on the notes to Gugenheim given two years earlier for their interests. By agreement the notes were offset against the undistributed earnings and were canceled and Gugenheim paid Bette $2,100 and his son $2,000 in cash or other consideration to adjust their remaining shares at $10,000 each. Upon this basis the cost to Gugenheim of the stock he received was its par value, computed as follows: Value of interest in assets
$ 69,800
Note payable to corporation
16,100
Cancellation of note of son
10,000
Cancellation of note of daughter
10,000
Additional cash paid son
2,000
Additional cash paid daughter
2,100
$110,000
Less additional interest sold
to Hancock
25,000
$ 85,000 Thus there was no profit or gain to Gugenheim upon the transfer of the properties to the corporation and the respondent erred in so determining. Decisions will be entered under Rule 50.